EXPLORATION MERCANTILE CO. v. PACIFIC HARDWARE & STEEL CO. et al.†

(Circuit Court of Appeals, Ninth Circuit. February 14, 1910.)

No. 1.745.

1. COURTS (§ 356*)—PROCEEDINGS FOR REMOVAL OF CAUSE—NOTICE—FEDERAL PRACTICE.

In proceedings in error in the federal courts, the citation signed by the judge of the court to which the writ is addressed or any judge or justice of the appellate court is the notice required by Rev. St. § 998 (U. S. Comp. St. 1901, p. 712).

[Ed. Note.—For other cases, see Courts, Dec. Dig. § 356.*]

2. CONTEMPT (§ 80*)—DENIAL OF PRIVILEGES AS LITIGANT—RIGHT TO APPEAL—PARTY IN CONTEMPT.

The fact that proceedings for contempt are pending against a party does not debar him from the right to prosecute proceedings for review of the judgment or order which he is charged with violating.

[Ed. Note.—For other cases, see Contempt, Dec. Dig. § 80.*]

3. BANKRUPTCY (§ 451*)—APPELLATE PROCEEDINGS—MATTERS REVIEWABLE.

The question whether a petition in involuntary bankruptcy alleges an act of bankruptcy does not go to the jurisdiction of the court, and is reviewable by the Circuit Court of Appeals.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 451.*

Appeal and review in bankruptcy cases, see note to In re Eggert, 43 C. C. A. 9.]

4. BANKRUPTCY (§ 81*)—INVOLUNTARY PETITION—SUFFICIENCY.

A petition in bankruptcy against a corporation which alleges that its entire capital stock is owned by three persons who compose its officers and directors, that within four months and when the corporation was insolvent, pursuant to a conspiracy between them to hinder, delay, and defraud its creditors, one of the stockholders commenced a suit against it asking for the appointment of a receiver, that the other stockholders accepted service, appeared, and joined in asking the appointment of one of them as receiver, which was made, is sufficient to sustain a verdict finding that the corporation "being insolvent applied for a receiver" for its property which constitutes an act of bankruptcy under Bankr. Act July 1, 1898, c. 541, § 3a (4), 30 Stat. 546 (U. S. Comp. St. 1901, p. 3422), as amended by Act Feb. 5, 1903, c. 487, 32 Stat. 797 (U. S. Comp. St. Supp. 1909, p. 1309).

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 81.*]

5. BANKRUPTCY (§ 60*)—ACTS OF BANKRUPTCY—APPLICATION FOR RECEIVER.

The fact that an application by an insolvent corporation to a state court for the appointment of a receiver for its property was not authorized by the laws of the state does not prevent such application from constituting an act of bankruptcy under Bankr. Act July 1, 1898, c. 541, § 3a (4), 30 Stat. 546 (U. S. Comp. St. 1901, p. 3422), as amended by Act Feb. 5, 1903, c. 487, 32 Stat. 797 (U. S. Comp. St. Supp. 1909, p. 1309).

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 80; Dec. Dig. § 60.*]

6. BANKRUPTCY (§ 60*)—"ACT OF BANKRUPTCY"—APPLICATION FOR RECEIVER.

To constitute an act of bankruptcy under the provision of Bankr. Act July 1, 1898, c. 541, § 3a (4), 30 Stat. 546 (U. S. Comp. St. 1901, p. 3422), as amended by Act Feb. 5, 1903, c. 487, 32 Stat. 797 (U. S. Comp. St. Supp. 1909, p. 1309), that it shall be an act of bankruptcy if a person "being insolvent applied for a receiver or trustee for his property," it is not essential that the application should be made on the ground of insolvency,

at least where the application is by a corporation for the purpose of winding up its affairs and. liquidating its indebtedness.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 80; Dec. Dig. § 60.*

For other definitions, see Words and Phrases, vol. 1, p. 118; vol. 8, p. 7562.]

In Error to the District Court of the United States for the District of Nevada.

Petition in involuntary bankruptcy on the part of certain creditors of the Exploration Mercantile Company, a corporation organized under the laws of and doing business in the state of Nevada, to have said corporation adjudged a bankrupt on the grounds that more than four months prior to the filing of the petition in bankruptcy the corporation had been insolvent, and during that time had committed an act of bankruptcy in applying to the district court of the state of Nevada for a receiver of its property. From an adjudication as a bankrupt. it brings error. Affirmed.

The opinion of Farrington, District Judge, in the court below, is as follows:

A jury having found that the Exploration Mercantile Company committed an act of bankruptcy by applying for a receiver while it was insolvent, a motion is now made in arrest of adjudication because of the alleged insufficiency of the creditors' petition. It is averred in the amended petition that "at the date of filing the original petition herein, to wit. September 12, 1908, for more than four months continuously next prior thereto and ever since said time, the aggregate of said Exploration Mercantile Company's property, at a fair valuation, amounted to less than the sum of $60,000, and that at all the said times its debts were in excess of $74,000." This is a sufficient allegation that the Exploration Mercantile Company was insolvent August 6, 1908, when an application was made to the state court for appointment of a receiver for the property of the company. It is next alleged that the entire capital stock of the company consists of 50,000 shares of the par value of $1 each, of which W. C. Stone owns 48,000 shares, F. G. Hobbs, 1,000 shares, and C. E. Wylie, 1,000 shares; that these three persons not only owned all the capital stock, but they constitute the entire board of directors of said corporation, Stone being its president, Wylie its vice president, and Hobbs its secretary and treasurer: that these three persons conspired and agreed to evade the provisions of the bankrupt act (Act July 1. 1898, c. 541, 30 Stat. 544 [U. S. Comp. St. 1901, p. 3418]) and to prevent creditors from obtaining a knowledge of the company's affairs, and from participating in the choice of a trustee; to hinder, delay, and defraud the creditors of the company, and to force them to accept less than the full amount of their claims: "that in pursuance of said conspiracy and agreement said directors and officers, acting for and on behalf, and as the act and deed, of said corporation, which was then and there insolvent as aforesaid, on the 6th day of August, A. D. 1908, caused to be filed in the district court of the First judicial district of the state of Nevada, in and for the county of Esmeralda, an application praying for the appointment of a receiver with a view to the dissolution of said corporation." The petition so caused to be filed was presented by the said W. C. Stone. It was averred therein that the assets of the company amounted to $95,000, while its liabilities were but $65,000; that owing to depressed conditions in business and the difficulty of making collections, the assets of the company were in danger of being wasted through attachment or litigation; that the plaintiff Stone is the holder of more than one-tenth of the capital stock of the corporation, and "that said corporation should be dissolved, and that a receiver should be appointed to take. charge of the business and affairs of said corporation. that its property may be preserved, its creditors paid. and its assets cared for." The prayer,

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

in substance, was that a receiver be appointed to manage the affairs of the company with a view to its dissolution. The creditors' petition also alleges that on the same day, August 6, 1908, the above-mentioned petition was filed, summons was issued, on which said Wylie in pursuance of said conspiracy, and as the act of said corporation, indorsed an admission of service; that on the same day the said directors and officers, as the act of said corporation, caused to be filed in said court and cause an appearance and application for the appointment of a receiver of the property of said company. Said appearance reads in part as follows: "W. C. Stone, Plaintiff, vs. Exploration Mercantile Company, a corporation, Defendant. Now comes C. E. Wylie, manager and one of the directors of the above-named defendant, and enters the appearance of the said defendant in the above-entitled cause, and asks the above-entitled court to appoint as receiver of said defendant, C. E. Wylie, the undersigned, one of the directors of said corporation. C. E. Wylie, Manager and Director of the Exploration Mercantile Company."

It is further alleged in the creditors' petition that on the same day "the directors and officers of said Exploration Mercantile Company, a corporation, acting for and on behalf, and as the act and deed, of said corporation, which was then and there insolvent as aforesaid, moved the said state court upon the said pleadings as above set forth, for an order, and said state court, on said day made its order, appointing said C. E. Wylie receiver," etc. On the following day said Wylie entered upon the duties of his office as such receiver; that on September 8, 1908, and at other times, said Stone in pursuance of said conspiracy, and as the act of said corporation, sought to settle claims against it for 60 cents on the dollar; that ever since August 6, 1908, said directors and officers have refused and still refuse petitioners access to the books of the company, and at all times have refused to permit petitioners' representatives to take or assist in taking an inventory of the property of the corporation. Near the end of the creditors' petition is this statement: "Ever since said 6th day of August, A. D. 1908, said Exploration Mercantile Company, a corporation, and each and all of said directors and officers have acquiesced in, upheld, ratified and confirmed the said proceedings and application for, and appointment of, said receiver as aforesaid; and said Frank G. Hobbs has ratified and confirmed the same and has since been continuously in the employ of said receiver." The petition concludes with a prayer that the Exploration Mercantile Company be adjudged bankrupt.

This petition having been filed, within due time thereafter the alleged bankrupt filed its answer, demanding a trial by jury. By consent of both parties the following issues in the form here set out were submitted to the jury: "Whether on the 6th day of August, 1908, the date of the appointment of C. E. Wylie as receiver of the Exploration Mercantile Company by the district court of the First judicial district of the state of Nevada in the case of W. C. Stone v. Exploration Mercantile Company, the aggregate of the property of the said Exploration Mercantile Company was, at a fair valuation, sufficient in amount to pay its debts. Whether on the 12th day of September, 1908, the date of the filing of the petition in bankruptcy in these proceedings, the aggregate of the property of said Exploration Mercantile Company was, at a fair valuation, sufficient in amount to pay its debts. Whether on the 6th day of August, A. D. 1908, the Exploration Mercantile Company, being insolvent, applied for a receiver for its property." The jury, after having heard the evidence and listened to the instructions of the court, returned a negative answer to the first and second interrogatories, and an affirmative answer to the third.

Among the grounds urged in arrest of judgment and of the order of adjudication, there is no intimation that the verdict is not sustained by the evidence. The several grounds may be resolved into one comprehensive objection: The creditors' petition failed to show that defendant was guilty of an act of bankruptcy in this, that it fails to show that defendant applied for a receiver for its property. It is contended that the petition not only fails to show that the corporation applied for a receiver, but under the Nevada statute it was and is impossible for any Nevada corporation to make such an application.

Section 7 of the General Incorporation Law of Nevada (St. 1903, p. 121) provides that every corporation created under the provisions of this act shall have power "to wind up and dissolve itself, or to be wound up and dissolved

in the manner hereinafter mentioned." The power granted is the power "to wind up and dissolve itself or to be wound up and dissolved in the manner hereinafter mentioned." It is the winding up and dissolution of the corporation which is provided for. There is no attempt to circumscribe or limit the power to ask the appointment of a receiver. Receivers are frequently asked and appointed for corporations when there is no thought of dissolution.

Section 89 of the act provides a method of dissolution by voluntary action of the stockholders, officers and creditors.

Section 94, under which the proceedings in this case were had, provides for winding up a corporation by the court, and reads as follows:

"Receiverships and Dissolution by the Court.

"Sec. 94. Whenever a corporation has in ten successive years failed to pay dividends amounting in all to five per cent. of its entire outstanding capital, or has willfully violated its charter, or its trustees or directors have been guilty of fraud or collusion or gross mismanagement in the conduct or control of its affairs, or its assets are in danger of waste through attachment, litigation, or otherwise, or said corporation has abandoned its business and has not proceeded diligently to wind up its affairs, or to distribute its assets in a reasonable time, or has become insolvent and is not about to resume its business with safety to the public, any holder or holders of one-tenth of the capital stock may apply to the district court, held in the district where the corporation has its principal place of business, for an order dissolving the corporation and appointing a receiver to wind up its affairs, and may by injunction restrain the corporation from exercising any of its powers or doing any business whatsoever, except by and through a receiver appointed by the court. Such court may, if good cause exist therefor, appoint one or more receivers for such purpose, but in all cases directors or trustees who have been guilty of no negligence nor active breach of duty shall have the right to be preferred in making such appointment, and such court may at any time for sufficient cause make a decree dissolving said corporation and terminating its existence."

Subsequent sections provide for notice to creditors, presentation of claims to the receiver within a limited time, the barring of claims not so presented, the sale of property, and the distribution of assets. Although the act does not provide for the discharge of the debtor, and is not so entitled, it is essentially an insolvency act. The winding up of the corporation discharges its debts. "An insolvent law is a law for the relief of creditors by an equal distribution among them of the assets of the debtor, but does not necessarily involve the discharge of the debtor." Harbaugh, Assignee,. v. Costello, 184 Ill. 110, 56 N. E. 363, 75 Am. St. Rep. 147; In re Merchants' Ins. Co., 17 Fed. Cas. No. 9,441; Moody v. Development Co., 102 Me. 365, 66 Atl. 967; In re Salmon & Salmon (D. C.) 143 Fed. 395. "In so far as the person and the subject-matter falls within the jurisdiction of the bankrupt act and is within the jurisdiction of the bankrupt court, the state insolvency law is superseded and cannot be invoked." Littlefield v. Gay, 96 Me. 423, 52 Atl. 925; Westcott & Co. v. Berry, 69 N. H. 505, 45 Atl. 352; In re Curtis (D. C.) 91 Fed. 737. In the absence of statutory authority courts of equity have no power to wind up the affairs of a corporation. Beach on Receivers, § 86. But when from any cause the property of a corporation is in imminent danger of waste or destruction and a receivership is necessary and there is no other adequate relief, a court of equity has inherent power to appoint a receiver to take charge of the corporate assets and affairs; but this power is to preserve and not to dissolve a corporation, and as soon as the necessity for such supervision ceases, the court must lift its hands and retire. Beach on Receivers, § 421. The doctrine that a receiver cannot be appointed for corporate property on application of the corporation itself applies quite as strongly to persons as to corporations. 17 Ency. Pl. & Pr. p. 687.

If the rule not only forbids the appointment, but also renders it impossible for a debtor to apply for the appointment of a receiver over his own property, why did Congress declare it an act of bankruptcy for a person being insolvent to apply for a receiver? It is unreasonable to suppose that Congress would prescribe an act which no one can commit. There is a difference between asking and receiving; between the application for and the granting of a receivership. A corporation through its officers may apply for relief which a court

may properly and justly refuse, or which it has no power to grant. When a person who is actually insolvent applies for a receiver for his property, the act of bankruptcy is committed, and this is so irrespective of any action which may be had in the court to which the application is made. The application is in itself an admission that the debtor's affairs require supervision.

The fact that certain powers are conferred by statute upon corporations does not mean that a corporation is unable to perform any act beyond the scope of such enumerated powers. The statute restricts the authority of the corporation, and fixes the limits beyond which its acts are unlawful and in excess of the powers conferred. If it were otherwise a corporation could not be guilty of an ultra vires act, a tort, or a misdemeanor. Corporations commit wrongful, unlawful and even criminal acts, and they are held responsible therefor even though the act is not the formal act of the corporation. United States v. MacAndrews & Forbes Co. (C. C.) 149 Fed. 823, 835; Clark on Corp. § 63. "There may be actual corporate conduct," says the court in People v. North River Sugar-Refining Co., 121 N. Y. 582, 619, 24 N. E. 838 (9 L. R. A. 33, 18 Am. St. Rep. 843) "which is not formal corporate action; and where that conduct is directed or produced by the whole body, both of officers and stockholders, by every living instrumentality which can possess and wield the corporate franchise, that conduct is of a corporate character, and, if illegal and injurious, may deserve and receive the penalty of dissolution."

A corporation is an association of natural persons united as one body, and endowed by law with the capacity to act in many respects as an individual, as a separate and distinct entity, but a corporation can only act or think or purpose through its officers, directors or stockholders. It is inconceivable that a corporation should form or carry into effect any design which is contrary to the wishes of its directors, officers, and stockholders; it exists to carry out their purposes and their plans. The conception that a corporation is a legal entity existing separate, apart and distinct from the natural persons who compose it is a fiction which has been introduced for convenience in making contracts, acquiring property, suing and being sued, and to secure limited liability on the part of stockholders. "It is a certain rule," says Lord Mansfield, C. J., "that a fiction of law shall never be contradicted so as to defeat the end for which it was invented, but for every other purpose it may be contradicted." Johnson v. Smith, 2 Burr. 962; Wood v. Ferguson, 7 Ohio St. 288; Clark on Corp. p. 9. The fiction of a corporate entity was never invented to promote injustice or defraud, and when it is used for such a purpose it should be disregarded, and the actual fact should be ascertained. In re Rieger, Kapner & Altman (D. C.) 157 Fed. 609, 613; Bank v. Trebein, 59 Ohio St. 316, 52 N. E. 834; State v. Standard Oil Co., 49 Ohio St. 137, 30 N. E. 279, 15 L. R. A. 145, 153, 34 Am. St. Rep. 541; People v. N. R. S. R. Co., 121 N. Y. 582, 613, 24 N. E. 834, 9 L. R. A. 33, 18 Am. St. Rep. 843; United States v. Milwaukee, etc., Co. (C. C.) 142 Fed. 247, 252; Holbrook, Cabot & Rollins Corp. v. Perkins, 147 Fed. 166, 169, 77 C. C. A. 462; Cawthra v. Stewart, 59 Misc. Rep. 38, 109 N. Y. Supp. 770; U. S. & Mexican Trust Co. v. Delaware, etc., Co. (Tex. Civ. App.) 112 S. W. 447, 460; Southern E. S. Co. v. State, 91 Miss. 195, 44 South. 785, 790, 124 Am. St. Rep. 638; 7 Am. & Eng. Ency. L. 633, 634; 1 Cook on Corp. (5th Ed.) p. 27. "For certain purposes the law will recognize the corporation as an entity distinct from the individual stockholders; but that fiction is only resorted to for the purpose of working out the lawful objects of the corporation. It is never resorted to when it would work an injury to any one, or allow the corporation to perpetrate a fraud upon anybody." Sportsman Shot Co. v. American S. & L. Co., 30 Wkly. Law Bul. 87.

In United States v. Milwaukee Refrigerator Transit Co. et al. (C. C.) 142 Fed. 247, 255, it was charged that the transit company was a dummy corporation organized, owned and operated by the stockholders of the brewing company as a device to cover the receipt of rebates on interstate shipments of beer. After an exhaustive examination of the authorities, the court stated the principle thus: "If any general rule can be laid down, in the present state of authority, it is that a corporation will be looked upon as a legal entity as a general rule, and until sufficient reason to the contrary appears; but, when the notion of legal entity is used to defeat public convenience, justify wrong, pro-

tect fraud, or defend crime, the law will regard the corporation as an associa-tion of persons."

In Re Rieger et al. (D. C.) 157 Fed. 609, a proceeding in bankruptcy, the. bankrupts were copartners; in the course of their business they had bought 99 per cent. of the outstanding stock of a corporation, the remaining shares. being held by relatives of one of the copartners. Receivers having been ap-pointed for the partnership assets, an application was made to extend the re-ceivership to the property of the corporation. It was charged that the bank-rupts having abandoned the partnership business, were still in control of the business and property of the corporation, and if permitted to remain in con-trol they would remove and dispose of it. The court held that all the prop-erty of the corporation belonged to the copartners, and entirely ignored the fact that the property belonged to a corporation. The court said: "The fiction of legal corporate entity cannot be so applied by the partners as to work a fraud on a part of their creditors, or hinder and delay them in the collection of their claims, and thus defeat the provisions of the bankruptcy act. The doctrine of corporate entity is not so sacred that a court of equity, looking through forms to the substance of things, may not in a proper case ignore it to preserve the rights of innocent parties or to circumvent fraud."

In Bank v. Trebein Co., 59 Ohio St. 316, 326, 52 N. E. 834, a failing debtor formed a corporation composed of himself and certain members of his family, to which he transferred all his property in exchange for stock of which he re-ceived substantially all. He immediately placed all his stock, except one share, with certain of his creditors as security for their claims, and then as presi-dent and general manager of the corporation, retained the control and manage-ment of the property and business which he had before the corporation was formed. The court declared the corporation, in substance, another Trebein, saying: "The fiction by which an ideal legal entity is attributed to a duly formed incorporated company, existing separate and apart from the indi-viduals composing it is of such general utility and application, as frequently to induce the belief that it must be universal, and be, in all cases adhered to, al-though the greatest frauds may thereby be perpetrated under the fiction as a shield. But modern cases, sustained by the best text-writers, confine the fiction to the purposes for which it was adopted—convenience in the transac-tion of business and in suing and being sued in its corporate name, and the continuance of its rights and liabilities, unaffected by changes in its corporate members; and have repudiated it in all cases where it has been insisted on as a protection to fraud or any other illegal transaction."

In Cawthra v. Stewart, 59 Misc. Rep. 38, 109 N. Y. Supp. 770, Stewart owned 98 shares of the capital stock of a corporation known as L. C. Stewart & Co., and controlled the other two shares. Cawthra, induced by false representa-tions made by Stewart, who was then a director of the company and its presi-dent, invested $3,000 in the corporate business and received half the stock. Suit was brought against Stewart and the company to rescind the stock con-tract and recover the amount paid. The corporation demurred that it was a distinct. definite entity, and not liable for any acts of Stewart which it had not authorized. The court said: "Strictly speaking, such terms as 'authority' and 'ratification' and others which imply separate personalties are inappro-priate. We do not have a case of agency, but of identity. It cannot properly be said that the corporation could clothe Stewart with authority any more than that Stewart could clothe himself with authority. He was the corpora-tion, and it was only another form of him. Whatever he did with respect to the matters he was handling under the guise of a corporation was the act of the corporation."

In the case of State v. Standard Oil Co., 49 Ohio St. 137, 30 N. E. 279, 15 L. R. A. 145, 34 Am. St. Rep. 541, it appears that the stockholders in various cor-porations and a number of copartnerships interested in the oil business agreed to transfer their interests in their several properties, and all their corporate stock, to certain trustees; they were to receive in lieu thereof trust certificates equal in par value to the stock which they surrendered. There was no act on the part of the corporation, no formal act, it was simply the act of the stock-holders of these various corporations, and of course that meant all the officers and the directors. It was held that this action of the stockholders was, un-

der the circumstances, to be regarded as the act of the corporation. The following extract is from the opinion: "Applying, then, the principle that a corporation is simply an association of natural persons, united in one body under a special denomination, and vested by the policy of the law with the capacity of acting in several respects as an individual, and disregarding the mere fiction of a separate legal entity, since to regard it in an inquiry like the one before us would be subversive of the purpose for which it was invented, is there, upon an analysis of the agreement, room for doubt that the act of all the stockholders, officers and directors of the company in signing it should be imputed to them as an act done in their capacity as a corporation? We think not, since thereby all the property and business of the company is, and was intended to be, virtually transferred to the Standard Oil Trust, and is controlled through its trustees, as effectually as if a formal transfer had been made by the directors of the company. On a question of this kind, the fact must constantly be kept in view that the metaphysical entity has no thought or will of its own; that every act ascribed to it emanates from and is the act of the individuals personated by it; and that it can no more do an act, or refrain from doing it, contrary to the will of these natural persons, than a house could be said to act independently of the will of its owner; and, where an act is ascribed to it, it must be understood to be the act of the persons associated as a corporation, and, whether done in their capacity as corporators or as individuals must be determined by the nature and tendency of the act. It therefore follows, as we think, from the discussion we have given the subject, that where all, or a majority, of the stockholders comprising a corporation do an act which is designed to affect the property and business of the company, and which, through the control their numbers give them over the selection and conduct of the corporate agencies, does affect the property and business of the company, in the same manner as if it had been a formal resolution of its board of directors, and the act so done is ultra vires of the corporation and against public policy, and was done by them in their individual capacity for the purpose of concealing their real purpose and object, the act should be regarded as the act of the corporation; and, to prevent the abuse of corporate power, may be challenged as such by the state in a proceeding in quo warranto."

While the motion now under consideration rests upon the alleged insufficiency of the creditors' petition, it may not be amiss to consider how completely certain allegations of the petition are supported and illustrated by the evidence. The creditors were refused access to the books. Even after proceedings in the state court were commenced the books were withheld and the creditors informed if they wished to see the accounts they must procure an order from that court. Mr. Ruhl was directed by the state court to expert the books, but even he, armed with this authority, was not permitted to examine all of them; the accounts of Mr. Stone were withheld, and but a semblance of full exhibition was had. An order to produce books and papers was required in this court in addition to the subpœna duces tecum. A number of leaves were torn from the journal by Mr. Stone, and either lost or destroyed. Mr. Stone gives as an excuse for such mutilation of the journal that the agent of Bradstreet insisted on seeing the books. In the merchandise account only those purchases of merchandise were recorded for which cash payments had been made. Credit purchases of merchandise were not shown by that account, and could be ascertained only by examination of the various statements which accompanied each purchase. Obviously books kept in such a manner do not show liabilities; they conceal the real conditions.

An auto account, an account with Mr. Pryor, and a very active stock and commission account show frequent and considerable investments of Exploration Mercantile Company money. These, the bookkeeper, Mr. Hobbs, stated were really accounts of Mr. Stone. The transfers into Mr. Stone's personal account were shown, if at all, on the destroyed journal leaves. The detached ledger leaves showing Mr. Stone's personal account were withheld from examination until an order for production of books and papers was made in this court during the progress of the trial. An entry made December 31, 1907, credits Mr. Stone with wages, $36,000, and rent $12,000; total $48,000. In reference to these matters Mr. Hobbs testifies as follows:

"(By Mr. Carney.) Q. I will ask you to examine petitioners' Exhibit No. 9, being the journal, on page 31, under the head of 'Profit and Loss,' and 'Rent.' What was the amount of rent for that store building during the year 1906? A. $3,600. Q. That is at the rate of $300 per month? A. Yes, sir. Q. That entry was made by yourself? A. It was. Q. As the treasurer of the corporation? A. Yes, sir. Q. I will ask you to examine this sheet known as 'Account Walter C. Stone,' on December 31, 1907 (hands to witness), for $12,000; when was that $12,000 placed thereon, the figures? A. When was it placed there? Q. Yes. A. On December 31, 1907. Q. 1907? A. Yes. Q. I will ask you to examine an item known as 'Sundries' on December 31, 1907, being an amount of $55,-801.50. A. Yes, sir. Q. What does that include? A. I could not tell unless I had the journal page for that, journal 50, or I could get it from the ledger with time, it will take a little time to figure these things. Q. This is the journal, is it not? (Hands book to witness.) A. Yes, sir; that page is missing. Q. That has reference to, the page that is missing, has it? A. Yes, sir. Q. And those pages that are missing included these items of account? A. The journal entries. Q. Have you any idea what that fifty-five thousand odd dollars is for? A. I have an idea, but I could not give it to you unless I could look over the ledger records, I could get it from that. Q. I will ask you to look at the item of December 31st, 'Wages to date, $36,000.' A. Yes, sir. Q. When was that entry made? A. December 31, 1907. Q. $36,000? A. Yes, sir. Q. I wish you would examine that paper and see if that was not $12,000? A. It has been changed, or the journal record was changed at that particular time, at that same time. Q. It had been changed at that time? A. Yes, it was changed at that time. Q. There has been considerable diligence on your part, on Mr. Stone's part, and on Mr. Wylie's part since the filing of this petition in bankruptcy to show by the books that this institution was solvent on the 6th day of August, 1908, has there not? A. Yes, sir. Q. I will ask you to look at the footings of $87,439.89, and ask you whether or not those footings have not been changed? A. The book records were changed at that particular time. Q. They were changed from $12,000 to $36,000? A. I don't know what the changes were; I would not state what the change was, but I remember of making that change myself; I made it. The Court: When did you say that change was made? A. At the time of entry. Q. (Mr. Carney.) When was the entry made? A. December 31, 1907. Q. Do you know what wages Mr. Stone received? A. The wages, no, unless I could figure it up. Q. What was his salary as the president of the corporation? A. I could not tell unless I figured it up from the ledger. Q. You have no recollection as to what Mr. Stone drew as an officer of that corporation for a salary? A. It went in as a lump sum, I believe, at that particular time. Q. As a matter of fact, Mr. Stone never received more than $300 per month, did he, during 1906, as wages? A. I don't remember, I could not tell. Q. Did you ever have any meeting as to what wages Mr. Stone should receive as an officer of this corporation? A. Yes, sir. Q. When was that meeting? A. At the time this entry was made, I think, some time around there. Q. Are there any records of it in the minute book of the Exploration Mercantile Company? A. I think so. Q. Will you kindly produce them. A. I am not absolutely certain, I think there was. Q. I hand you the minute book of the corporation (hands to witness), do you find any memorandum there? A. It says, 'Meeting of the board of directors of the Exploration Mercantile Company. This meeting of the board of directors held on the 2d day of January, 1908, in the office of the company, present W. C. Stone, Frank G. Hobbs, C. E. Wylie. At this meeting the board examined the books of the corporation kept by its secretary, Frank G. Hobbs, and the balances struck by him, and on motion it was resolved that the said accounts are correct, and the balances are true, and that the same be and are hereby adopted and affirmed.' Q. Those are minutes placed there by typewriting? A. Yes, sir; these are typewritten minutes. Q. Where were they prepared? A. I don't know."

The reasons why Messrs. Stone, Wylie, and Hobbs objected to an examination of the books are obvious. There is some testimony to the effect that Mr. Hobbs and Mr. Wylie objected to the petition presented by Mr. Stone in the state court, but in the light of their conduct I am satisfied their objections were not serious. The refusal to permit examination of the books, and the

adoption and use of a method of bookkeeping which tended to conceal the real condition of the business, were calculated to hinder and delay creditors. In this Messrs. Stone, Wylie, and Hobbs participated. The conduct of each of them indicates that he knew there was something to be concealed from the creditors, and also that he knew the concern was insolvent. They seem to have agreed upon Mr. Stone's salary after the services had been rendered. The term of service could not have exceeded two years, for which they fixed a salary of $18,000 per year. During a portion of these two years Mr. Stone was traveling in Europe and China. Is it reasonable to suppose that a concern having a total capital stock of $50,000, paying its president a salary of $18,000 per year and a rent of $12,000 per year, can be operated at a profit? The evidence is very conclusive that each of the three men knew the business was running behind, and wished to conceal that fact. When the creditors were about to commence attachment suits, Mr. Stone, who had received the $48,000 credit, who had mutilated the journal, who had withheld his own account from examination, who was then the actual owner of 96 per cent. of the stock of the concern, filed in the state court a petition asking that court to wind up the corporation, and place its property in the hands of a receiver because litigation was threatened and the assets were likely to be wasted. Mr. Wylie, general manager of the corporation, immediately appeared in court and filed an admission of service for the corporation, and a request that he himself be appointed receiver. This proceeding in the state court was certainly in harmony with the previous and subsequent conduct of the three men; it was but a part of a scheme to hinder and delay and therefore to defraud the creditors of the Exploration Mercantile Company, and the scheme was participated in, and consistently pushed and carried out by all the officers of the corporation, by its president, secretary and treasurer, general manager, and directors, and by all its stockholders.

It is alleged, and the testimony shows, that all the directors, officers, and stockholders of the Exploration Mercantile Company, as the act and deed of the corporation, caused the Stone petition to be filed and a receiver to be asked for, and later that they, in behalf of said corporation, as its act and deed, moved the court for an order appointing Wylie receiver. It is also averred that the corporation ratified the act. It is also alleged, and amply proven by the testimony, that this was all done to hinder, delay, and defraud its creditors; and it is clear from the testimony that these persons, Stone, Wylie, and Hobbs, knew the corporation was insolvent at the time the receiver was applied for. Under the shelter of a receivership, which tied the hands of the creditors, they proposed themselves to control its business and conceal its actual condition. Inasmuch as all the stockholders, all the officers and all the directors of this corporation, without exception, are using the distinction between themselves and the corporate entity for the purpose of hindering, delaying and defrauding creditors, that distinction should be disregarded, and the act of applying for a receiver should be imputed to the corporation itself.

The motion in arrest of judgment is denied, and the usual adjudication of bankruptcy will be entered.

Thompson, Morehouse & Thompson, for plaintiff in error.

J. L. Kennedy, for defendants in error.

Before GILBERT and MORROW, Circuit Judges, and HUNT, District Judge.

MORROW, Circuit Judge. The defendants in error have moved to dismiss the writ of error, first, on the ground that no notice of the petition for the writ of error or of the hearing thereof was given as provided by law. The defendants in error were duly served with a citation signed by the District Judge to appear in this court and show cause why the judgment mentioned in the writ of error should not be corrected. In proceedings on error the citation signed by the judge of the court to which the writ is addressed or any judge or jus-

tice of the appellate court is the notice required by section 998 of the Revised Statutes (U. S. Comp. St. 1901, p. 712) for the removal of any cause to the appellate court. Foster's Federal Practice (4th Ed.) § 507.

The second ground of the motion is that the proceedings for contempt have been brought against the officers and attorneys of the Exploration Mercantile Company, and pending such proceedings they are not entitled to any relief other than such as may result from a showing in clearing the parties of the charge of contempt. Beach on Modern Equity Practice states the rule as follows:

"The general rule is that one who is in contempt is never to be heard by motion or otherwise until he has cleared his contempt and paid the costs. But the rule applies to matters of favor, and a party, although adjudged in contempt, may be heard on matters of strict right."

In support of the rule thus stated the author cites a large number of English and American cases, among others the case of Brinkley v. Brinkley, 47 N. Y. 40, where Judge Folger, discussing the subject at length and after citing cases, says:

"The conclusion to be drawn from them is this: That a party in contempt and until he is purged of it will not be permitted to ask for the favor of the court, nor to take any aggressive proceedings against his adversary; but that it is his right to take measures to protect himself, and to make any motion designed to show that the order adjudging him in contempt was erroneous. He may move to discharge the order though in contempt for not obeying it. * * * And if a party may move to set aside or discharge the order as erroneous, to rid himself of a contempt, he may, it must follow, take any other course which the law allows to a party to establish that it is erroneous; and an appeal from it, and a review of it in an appellate court, is such other course."

See, also, Kaehler v. Dobberpuhl, 56 Wis. 497, 501, 14 N. W. 631, 633.

The third ground of the motion is that this court has no jurisdiction, for the reason that the only alleged error which can be considered by a reviewing court is the claim made that the District Court had no jurisdiction of the subject-matter of the controversy; and the only court which can review that question is the Supreme Court of the United States. The jurisdictional question involved in this case is not of the class of jurisdictional questions over which the Supreme Court takes jurisdiction. The District Court has jurisdiction of all bankruptcy proceedings. The question whether the petition in this case alleged an act of bankruptcy against the Exploration Mercantile Company does not go to the jurisdiction of the bankruptcy court. In that respect it is like the question whether the alleged bankrupt is one who may be proceeded against in involuntary bankruptcy under the act. Denver First Nat. Bank v. Klug, 186 U. S. 202, 22 Sup. Ct. 899, 46 L. Ed. 1127; Schweer v. Brown, 195 U. S. 171, 25 Sup. Ct. 15, 49 L. Ed. 144; Lucius v. Cawthon-Coleman Co., 196 U. S. 149, 25 Sup. Ct. 214, 49 L. Ed. 425; Columbia Iron Works Co. v. National Lead Co., 127 Fed. 99, 62 C. C. A. 99, 64 L. R. A. 645. The motion to dismiss the writ of error is overruled.

The original petition praying that the plaintiff in error be adjudged a bankrupt was filed by certain creditors in the United States District

Court for the district of Nevada on September 12, 1908. To this petition a demurrer was interposed by the plaintiff in error which was sustained, with leave to the petitioning creditors to file an amended petition. An amended petition was accordingly filed on October 24, 1908, alleging, in substance, that for the greater portion of six months next preceding the time of filing the original petition and ever since said time plaintiff in error had its principal place of business at Goldfield, county of Esmeralda, state of Nevada, and at all of said times it had been and was then engaged principally in trading and mercantile pursuits; and at the time of filing the original petition owed debts to the amount of $1,000, and had continued to owe debts in that amount: that at the date of filing the original petition on September 12, 1908, and for four months continuously next prior thereto, and ever since that time the plaintiff in error had been and was then insolvent; that at the date of filing the original petition on September 12, 1908, and for more than four months continuously next prior thereto and ever since that time the property of the plaintiff in error at a fair valuation amounted to less than the sum of $60,000, and that all the said times its debts were in excess of $74,000; and that within four months next preceding the date of the filing of the original petition the plaintiff in error had committed an act of bankruptcy in that on or about the 6th day of August, 1908, it being insolvent had applied for a receiver for its property; that is to say: It is alleged that the plaintiff in error was organized on the 14th day of February, 1906, by W. C. Stone, C. E. Wylie, and Frank G. Hobbs; that the amount of the capital stock was then and ever since had been $50,000, divided into 50,000 shares of the par value of $1 each; that W. C. Stone owned 48,000 shares, C. E. Wylie, 1,000 shares, and Frank G. Hobbs, 1,000 shares; that the persons mentioned had continued to own all the stock in the corporation; that, although the articles of incorporation of the plaintiff in error provided that the board of directors should be five, there never had been more than three directors, and the persons named as stockholders had ever since the organization of such corporation continued to be and were such directors; that W. C. Stone had been and was president, C. E. Wylie, vice president, and Frank G. Hobbs, secretary and treasurer of the corporation; that on and prior to the 6th day of August, 1908, certain creditors of the plaintiff in error which was then and there insolvent were demanding payment of their just claims against the corporation; that Stone, Wylie, and Hobbs, the directors and officers of the corporation, then and there conspired and agreed together and ever since had conspired and agreed together to take such measures and do such acts as would hinder, delay, and defraud the creditors of the corporation, and would compel the creditors to accept less than the full payment of their just claims, and thereby obtain for such directors and officers a large part of the property of the corporation and prevent said creditors from obtaining a knowledge of its true condition and of the affairs of the corporation, and from having or participating in the choice of a person or persons to act as trustee of such corporation or its property; that in pursuance of said conspiracy and agreement said directors and officers acting for and on behalf, and as the act and deed, of said corporation on the 6th day of August,

1908, caused to be filed in the district court of the First judicial district of the state of Nevada in and for the county of Esmeralda an application praying for the appointment of a receiver with a view to the dissolution of the corporation. In this petition to the state court W. C. Stone was plaintiff and the plaintiff in error was the defendant.

The petition in the state court recited that the plaintiff Stone was president, Wylie, vice president, and Hobbs, secretary and treasurer of the corporation; that the corporation had liabilities in the sum of about $65,000, and its assets exceeded $95,000; that owing to the depressed condition in business, and the inability of the defendant corporation at that time to collect the amounts owing to it, the said corporation was in danger of its assets being wasted through attachment or litigation, as the claims mentioned and other claims were due, and the corporation was at any time liable to be attached and therefore would be unable to carry on and continue its business, or to be put to very large and useless expense by way of litigation, and the assets of the property be wasted thereby; that the plaintiff, Stone, was the holder of more than one-tenth of the capital stock of the corporation, and that by reason of the facts stated the corporation should be dissolved and a receiver appointed to take charge of the business and affairs of the corporation that its property might be preserved, its creditors paid, and its assets cared for. The prayer of the petition was that the court should appoint a receiver to take charge of the affairs of the corporation and conduct and manage the same with a view of its dissolution under the orders and direction of the court; that the corporation and its directors and each of them be enjoined and restrained from exercising any of its powers or doing any business except through, by, and under said receiver. The creditors' amended petition alleges, further, that on the 6th day of August, 1908, when said petition was filed in the state court, summons was issued and delivered to C. E. Wylie as manager and director of the plaintiff in error who accepted service of the same, and thereupon said directors and officers, acting for and on behalf and as the act and deed of the corporation, caused to be filed with the clerk of the court thereof an appearance and application for the appointment of a receiver for the property of the plaintiff in error as follows:

"Now comes C. E. Wylie, manager and one of the directors of the above-named defendant, and enters the appearance of the said defendant in the above-entitled cause, and asks the above-entitled court to appoint as receiver of said defendant, C. E. Wylie, the undersigned, one of the directors of said corporation."

This appearance and application is signed by C. E. Wylie, manager and director of the corporation.

It is further alleged in the creditors' amended petition that on the 6th day of August, 1908, the directors and officers of the plaintiff in error acting for and on behalf and as the act and deed of said corporation moved the said court upon the said petition for an order appointing said C. E. Wylie receiver of the property of the plaintiff in error, with the full power to take charge of the assets and control the business of said company; that said C. E. Wylie was thereupon appointed receiver and filed his bond as such, and took the oath of of-

fice on the 7th day of August, 1908, taking possession of the business property and effects of said corporation as such receiver; that on September 8, 1908, and at other times in further pursuance of said conspiracy and agreement the said W. C. Stone, acting for and on behalf and as the act and deed of said corporation, sought to bring about a settlement of the claims of said creditors of said corporation whereby said creditors would obtain not to exceed 60 per centum of their claims; that said Stone said to the creditors that by making such settlement the creditors would obtain a greater sum of money than they would if they litigated their claims, or if the affairs of said corporation were administered in bankruptcy by the United States court; that by making such settlement the directors and officers would make something for themselves; that the directors and officers of said corporation in pursuance of said conspiracy and agreement had ever since the 6th day of August, 1908, refused petitioners access to the books of the corporation and at all times had refused to permit the agent and representative of the petitioners to take or assist in taking an inventory of the property of the corporation, although such access and opportunity were requested; that ever since the 6th day of August, 1908, the plaintiff in error and each and all the said directors had acquiesced in, upheld, ratified, and confirmed the said proceedings and application for, and appointment of said receiver; that said Hobbs had ratified and confirmed the same and had since been continuously in the employ of said receiver. The petition prayed that the plaintiff in error should be adjudged a bankrupt.

To this amended creditors' petition the plaintiff in error filed its answer and demanded a jury trial. The answer and demand for a jury trial was signed by Frank G. Hobbs, secretary. In its answer plaintiff in error alleged, among other things, that the proceeding in the state court was taken against it and was not the act of the plaintiff in error; that the plaintiff in error was not insolvent; that its property at a fair valuation was more than sufficient to pay its debts. It denied the conspiracy charged against its officers and directors; denied that they conspired or agreed to measures or acts to hinder, delay, and defraud creditors or to compel such creditors to accept less than the full payment of their just claims. Admitted that Stone did by way of compromise make a proposition to the petitioning creditors to adjust their claims upon a basis approximately at 60 per centum. Denied that this proposition of compromise was made in furtherance of any conspiracy. Asserted the jurisdiction of the state court over the subject-matter and the person of the plaintiff in error and of the receiver. Denied the jurisdiction of the United States District Court in the premises and demanded that the matter be inquired into by jury. A jury trial was had and resulted in a verdict answering the following interrogatories submitted by the court:

"Interrogatory No. 1. Whether on the 6th day of August, 1908, the date of the appointment of C. E. Wylie as receiver of the Exploration Mercantile Company by the district court of the First judicial district of the state of Nevada, in the case of W. C. Stone v. Exploration Mercantile Company, the aggregate of the property of the said Exploration Mercantile Company was at a fair valuation, sufficient in amount to pay its debts? Answer: No.

"Interrogatory No. 2. Whether on the 12th day of September, 1908, the date of the filing of the petition in bankruptcy in these proceedings, the aggregate of the·property of said Exploration Mercantile Company was, at a fair valuation, sufficient in amount to pay its debts? Answer: No.

"Interrogatory No. 3. Whether on the 6th day of August, A. D. 1908, the Exploration Mercantile Company being insolvent applied for a receiver for its property? Answer: Yes."

The plaintiff in error thereupon moved the court in ·arrest of judgment because of the insufficiency of the creditors' amended petition. This motion being denied by the court, the plaintiff in error was adjudged a bankrupt.

The case is here upon a writ of error with an assignment of errors, but as no exceptions were taken, and there is therefore no bill of exceptions in the record, the main question to be determined is the sufficiency of the creditors' amended petition in bankruptcy. Section 3 of the Bankruptcy Act of July 1, 1898, 30 Stat. 544, 546 (U. S. Comp. St. 1901, p. 3422), provided as follows:

"a. Acts of bankruptcy shall consist of his having * * * (4) made a general assignment for the benefit of his creditors."

The amendatory act of February 5, 1903, c. 487, 32 Stat. 797 (U. S. Comp. St. Supp. 1909, p. 1309), added the following provision:

"Or being insolvent applied for a receiver or trustee for his property, or because of insolvency a receiver or trustee has been put in charge of his property under the laws of a state, of a territory, or of the United States."

The objection made by the plaintiff in error by its motion in arrest of judgment that the creditors' petition was insufficient in law could have been raised by demurrer. It took the alternative procedure of interposing an answer denying that on the 6th day of August, 1908, application was made to the state court for the appointment of a receiver for its property; denied that it was insolvent, but it averred that, on the contrary, its property at a fair valuation was more than sufficient to pay its debts. It denied that it had committed an act of bankruptcy as alleged in the creditors' petition, but averred on the contrary that the proceedings taken in the state court for the appointment of a receiver were taken against it, and was not its act. For the determination of these issues it demanded a jury trial, that is to say, it demanded that these issues should be tried and determined as questions of fact. A jury trial was had, and resulted in a verdict and judgment in which these issues were found and adjudged against the plaintiff in error. No error is alleged to have been committed by the court in the course of the trial, and no exceptions were taken either to the admission or rejection of evidence or to the instructions to the jury. It was therefore found and determined as a fact that the plaintiff in error was insolvent when application was made to the state court for the appointment of a receiver for its property. It was further found and determined as a fact that the plaintiff in error being insolvent applied to the state court for the appointment of a receiver of its property. To enable the jury to find and determine these issues it will be presumed that the court instructed the jury correctly as to the law of insolvency, and the acts that would under the bank-

ruptcy act constitute an application on the part of a corporation to the state court for the appointment of a receiver of its property.

The charge in the creditors' petition that the plaintiff in error being insolvent applied for a receiver for its property is followed by the direct allegation that the corporation was "then and there insolvent." This is a sufficient allegation that the plaintiff in error was insolvent when the application for a receiver was made.

With respect to the other question as to whether the charge that the plaintiff in error had committed an act of bankruptcy in applying for a receiver of its property, the objection is made that the facts stated in the creditors' petition do not show that the plaintiff in error applied for the appointment of a receiver for its property; on the contrary, that the application was made by a stockholder. Without imputing to the plaintiff in error a waiver of this question as a question of law it is obvious that upon a motion in arrest of judgment the question is reduced to narrow limits. We cannot for example consider the objection that it is not alleged that there was a stockholders' meeting of the corporation, or a meeting of the board of directors, or that there was no resolution of any kind by the corporation and no allegation of corporate authority granted or given to any agent or person to apply for the appointment of a receiver.

We are not here dealing with the lawful act of the plaintiff in error acting in a lawful corporate capacity, but with the acts of certain individuals holding all the stock of the corporation and constituting its officers and directors, who, it is alleged, have "conspired and agreed together to take such measures and do such acts as would hinder, delay, and defraud the creditors of said corporation  *  *  *  and would evade the provisions of the laws of the United States in reference to bankruptcy, and prevent such creditors from obtaining a knowledge of the true condition of said corporation's affairs, and from having or participating in the choice of a person or persons to act as trustee of said corporation or its property." With respect to the acts of these parties it is alleged:

"That in pursuance of said conspiracy and agreement said directors and officers acting for and on behalf and as the act and deed of said corporation, which was then and there insolvent as aforesaid, on the 6th day of August, 1908, caused to be filed in the district court of the First judicial district of the state of Nevada, in and for the county of Esmeralda, an application praying for the appointment of a receiver with a view to the dissolution of said corporation."

The application for a receiver in the name of the stockholder as set forth in the petition is charged to be the act and deed of the corporation; and it is further charged that the directors and officers of the corporation acting for and on behalf and as the act and deed of the corporation accepted the service issued in the case, and thereupon caused to be filed with the court an appearance and application for the appointment of a receiver. We think these allegations are sufficient and charge the corporation with having committed an act of bankruptcy in applying for a receiver of its property. The corporate entity cannot be so disguised that it can successfully masquerade in the name of a stockholder, and, evading the searching eyes of a court of

equity, hinder, delay, and defraud its creditors and defeat the provisions of the bankruptcy act. A court of equity looks through forms to the substance of things, thus preserving the rights of innocent parties against all forms of deception and fraud.

It is further objected that the laws of the state of Nevada do not permit or' authorize a corporation to apply for the appointment of a receiver; that the state court did not have jurisdiction over such an application, and that the application for a receiver for a corporation to be an act of bankruptcy under the bankruptcy act must be an application made under the laws of the state, that is to say, it must in every respect be a lawful application conforming to the laws of the state. This is not the language of the bankruptcy act; nor do we think it was the purpose of Congress to make the act of bankruptcy dependent upon the pretended regularity of the proceedings of the state court. That court may be imposed upon and its jurisdiction invoked to defeat the jurisdiction of the bankruptcy court as charged in this case. It is sufficient that the corporation is insolvent, and, being insolvent, has applied for a receiver whereby the property of the corporation is to be taken possession of and administered and distributed by the state court. It is against such proceedings that the bankruptcy act confers exclusive jurisdiction on the bankruptcy court. "The operation of the bankruptcy laws of the United States cannot be defeated by insolvent commercial corporations applying to be wound up under state statutes. The bankruptcy law is paramount, and ·the jurisdiction of the federal courts in bankruptcy, when properly invoked, in the administration of the affairs of insolvent persons and corporations, is essentially exclusive." In re Watts and Sachs, 190 U. S. 1, 27, 23 Sup. Ct. 718, 724, 47 L. Ed. 933.

It is further contended that the application for the appointment of a receiver did not constitute an act of bankruptcy for the reason that it did not appear on the face of .the proceeding in the state court that the application was made to that court on the ground of insolvency; that unless the proceeding in the state court is based on insolvency it is not an act of bankruptcy; and that the question of solvency or insolvency as related to the application for a receiver is not an issue to be tried in the bankruptcy court but must be found on the facts appearing on·the record in the state court. The act of February 5, 1903 (32 Stat. 797), amending the bankruptcy act of July 1, 1898, added two provisions to the section providing two additional acts of bankruptcy, viz.: (1) Being insolvent applied for a receiver or trustee for his property. (2) Because of insolvency a receiver or trustee has been put in charge of his property under the laws of a state, of a territory, or of the United. States.

Under the second provision it has been held that where the creditors' petition charges a single act of bankruptcy, viz., "because of insolvency a receiver or ·trustee has been put in charge of his property under the laws of a state," the act of bankruptcy is dependent upon the state of facts disclosed upon the record in the case before the court making the appointment of a receiver. In re Douglas Coal & Coke Co. (D. C.) 12 Am. Bankr. Rep. 539, 131 Fed. 769; In re Spalding,

14 Am. Bankr. Rep. 129, 139 Fed. 244, 71 C. C. A. 370. But our attention has not been called to any case that holds that under the first provision of the statute where the creditors' petition charges a single act of bankruptcy, viz., "being insolvent applied for a receiver or trustee for his property." the act of bankruptcy is dependent upon the record in the court to which the application for a receiver is made; that is to say, we do not find any case holding that unless the petition to the court for a receiver states that the application is based upon the insolvency no act of bankruptcy has been committed. The charge of "being a bankrupt" in the first provision of the statute is an issue to be tried and determined in the bankruptcy court, and upon the determination of that court rests the question as to whether the bankrupt was insolvent when the application for a receiver was made.

With respect to the application for a receiver it may be conceded that if it appears from the record and is established by proof that the application is made under some statutory authority or general equity jurisdiction having no relation to insolvency, then the act of applying for a receiver is not an act of bankruptcy. But when it appears that the application for a receiver has relation to insolvency, and that the purpose of the proceeding is to have the corporation managed with a view to its dissolution and the distribution of its assets among the creditors of the insolvent, then the application for a receiver is clearly an act of bankruptcy.

Turning now to the application that was made to the state court for the appointment of a receiver in this case we find that it was alleged:

"That, owing to the depressed condition in business and the inability of said defendant corporation at the present time to collect the amounts owing to it, the said corporation is in danger of its assets being wasted through attachment or litigation, as the aforesaid claims and other claims are due, and the said corporation is liable at any time to be attached and therefore be unable to carry on and continue its business or to be put to very large and useless expense by way of litigation, and the assets of the property be wasted thereby;" and "that by reason of the facts aforesaid the said corporation should be dissolved, and that a receiver should be appointed to take charge of the business and affairs of said corporation. that its property may be preserved, its creditors paid, and its assets cared for."

In our opinion these facts appearing upon the face of the record in the state court coupled with the fact of insolvency charged in the creditors' petition are sufficient to constitute an act of bankruptcy under the first clause of the amendment of February 5, 1903.

It follows that the creditors' amended petition states facts sufficient to constitute a cause of action in bankruptcy, and the decree of the District Court must be affirmed; and it is so ordered.