### MISSOURI VALLEY CATTLE LOAN CO. v. ALEXANDER et al. BANK OF CARTERSVILLE v. SAME.

(Circuit Court of Appeals, Eighth Circuit. October 10, 1921.)

Nos. 5760, 5761.

1. **Bankruptcy ⊂⇒440—Order denying petition to set aside adjudication not appealable.**

   Bankruptcy Act, § 25a (Comp. St. § 9609), does not authorize an appeal from an order denying the petition of a creditor to set aside an adjudication and for leave to defend against the creditor's petition.

2. **Bankruptcy ⊂⇒60—Appointment of receiver as "act of bankruptcy."**

   In order that the appointment of a receiver shall constitute an act of bankruptcy under Bankruptcy Act, § 3a, subd. 4, as amended by Act Feb. 5, 1903 (Comp. St. § 9587), it must be found either (1) that the alleged bankrupt, "being insolvent, applied for a receiver," or (2) that "because of insolvency a receiver * * * has been put in charge of his proper-

⊂⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

ty," and a general finding that he was insolvent and that a receiver was appointed is insufficient.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Act of Bankruptcy.]

3. **Bankruptcy** ⊂⊃76(1)—**Petitioners held not shown to be creditors.**

Subscribers to the stock of a corporation have not the standing of creditors who may maintain an involuntary petition against it, merely on an allegation that their subscriptions were induced by fraud, in the absence of any adjudication that they are entitled to rescind their subscription contracts and recover the amounts paid thereon.

Appeal from the District Court of the United States for the District of Nebraska; Joseph W. Woodrough, Judge.

In the matter of the Missouri Valley Cattle Loan Company, alleged bankrupt. Involuntary petition of Thomas M. Alexander and others, alleged creditors. From an order of adjudication the company appeals. Reversed. Also appeal by Bank of Cartersville from an order denying its petition to set aside the adjudication. Appeal dismissed.

Arthur R. Wells, of Omaha, Neb. (John F. Stout, Halleck F. Rose, and Paul L. Martin, all of Omaha, Neb., on the brief), for appellants.

Francis A. Mulfinger and Grenville Paul North, both of Omaha, Neb. (William R. Patrick and Michael L. Donovan, both of Omaha, Neb., on the brief), for appellees.

Before SANBORN and CARLAND, Circuit Judges, and MUNG-ER, District Judge.

CARLAND, Circuit Judge. On July 2, 1920, Peterson, Satterfield, Fuller, Brooke, McNally, Davidson, and Alexander, claiming to be creditors of Missouri Valley Cattle Loan Company, filed an involuntary petition in bankruptcy against it praying that said company be adjudged a bankrupt. The petitioners claimed to be creditors for the reason that they had been induced to enter into contracts for the purchase of the stock of the alleged bankrupt by false and fraudulent representations of its agents, and that in pursuance of said contracts petitioners had given to it cash and promissory notes; that some of the notes had passed into the hands of innocent purchasers. Peterson also claimed to be the owner of a note indorsed by the alleged bankrupt. The alleged bankrupt was declared to be insolvent and while insolvent had committed certain acts of bankruptcy which were stated in general terms. On July 28, 1920, the Farmers' State Bank of Springfield, Neb., Clark H. Fuller, Frank R. Beebe, and Floyd Davidson, claiming to be creditors of the alleged bankrupt, filed an intervening petition wherein they joined in the prayer of the petition of Peterson et al. The claim of the bank arose on account of the ownership by it of certain notes endorsed by the alleged bankrupt. Fuller's claim was based on a judgment. The claims of Beebe and Davidson were of the same character as the original petitioners. The intervening petition alleged specifically that the alleged bankrupt had on July 1, 1920, while insolvent and within four months next preceding the filing of the original petition, applied for a receiver of its property, and further that

on the date aforesaid the alleged bankrupt being insolvent a receiver had been put in charge of its property.

The alleged bankrupt answered the original petition and the intervening petition of the Farmers' State Bank et al. by filing a general denial. On August 2, 1920, Walker, Van Syckle, and Heldman, claiming to be creditors of the alleged bankrupt, were allowed to intervene and they joined in the prayer of the original petitioners. The claim of these interveners arose in the same way as those in the original petition. August 18, 1920, the trial court after hearing a part of the evidence of the petitioners and interveners adjudicated the alleged bankrupt a bankrupt upon the following findings:

"1. That the said petitioners have provable claims against the said Missouri Valley Cattle Loan Company in excess of the sum of $500, and that the indebtedness of said Missouri Valley Cattle Loan Company on July 1, 1920, was in excess of the sum of $1,000.

"2. The court finds that the subscriptions to the capital stock of the respondent corporation were obtained by means of a scheme to defraud stock subscribers in said corporation, which scheme to defraud was set on foot and carried out by one R. V. McGrew, the Missouri Valley Finance Company, and others associated together in said scheme to defraud, and out of all stock subscriptions so obtained, on account of which money, notes, or anything of value was obtained by the company a liability arose from the corporation to the subscriber for the amount so received. The respondent corporation, by reason of such liability and indebtedness to said stock subscribers, was insolvent on the 1st day of July, 1920, and by reason of said indebtedness the indebtedness of said respondent exceeded the fair value of its assets.

"The court further finds that the number of said stock subscribers is large, and the above finding applies to them generally, but is made without prejudice as to any particular claim that may be drawn in question in the bankruptcy proceedings.

"Provided, however, that nothing contained in these findings and order of adjudication shall determine or affect the order of priority among creditors in the distribution of the funds of the bankrupt.

"3. The court further finds that the appointment of receivers for said Missouri Valley Cattle Loan Company on July 1, 1920, was an act of bankruptcy."

[1] August 23, 1920, the Bank of Cartersville filed a petition praying that the adjudication be set aside and that the bank be allowed to contest the involuntary and intervening petitions. August 27, 1920, this petition was denied. The appeal from this order of denial is known in this record as No. 5761. It must be dismissed as the order was made in a bankruptcy proceeding and no appeal is allowed by section 25a, 30 Stat. 553 (Comp. St. § 9609), in such cases. Henkin v. Fousek, 267 Fed. 557, and cases cited.

[2] In regard to No. 5760, being the appeal of the alleged bankrupt from the order of adjudication, we find that section 3a, subd. 4, 30 Stat. 546, as amended by the Act of February 5, 1903, c. 487, § 2 (section 9587), provides:

" * * * Or, being insolvent; applied for a receiver or trustee for his property or because of insolvency a receiver or trustee has been put in charge of his property under the laws of a state, of a territory, or of the United States."

The act of bankruptcy, if any, committed by the alleged bankrupt so far as the record shows, is alleged to have arisen under the language

of subdivision 4 above quoted. Assuming that the trial court correctly found the alleged bankrupt to have been insolvent on July 1, 1920, it still remains true that there is no finding that the alleged bankrupt applied for a receiver of its property or that the receiver was put in charge of its property because of insolvency. It is not necessary that the alleged bankrupt should have applied for a receiver because of its insolvency, but it is necessary that being insolvent it did so apply. By the last clause of subdivision 4, it is not only necessary that the alleged bankrupt be insolvent, but that the receiver must have been appointed because of such insolvency. Hill v. Electric Co., 214 Fed. 243, 130 C. C. A. 613; James Supply & Hardware Co. et al. v. Dayton Coal & Iron Co., 223 Fed. 991, 139 C. C. A. 367. That this is the correct construction to be placed upon the language is shown when we consider that if the appointment of the receiver under the first clause must be because of insolvency, the last clause would be sufficient without the first. In James Supply & Hardware Co. et al. v. Dayton Coal & Iron Co., supra, it was held that if the appointment of a receiver for an insolvent corporation, although in a suit to which it was defendant, was in fact procured by the corporation, it would be as effectively an act of bankruptcy as though the suit had been in its own name as complainant. On the other hand, in the case of In re Connecticut Brass & Mfg. Corp. (D. C.) 257 Fed. 445, it was held upon somewhat similar facts as appear in the present record that it was not shown that the corporation applied for a receiver. In the following cases it appears that the decisions reached were based upon an allegation of insolvency or that the person or corporation was insolvent and for that reason joined in the application for the appointment of a receiver: In re Spalding, 139 Fed. 244, 71 C. C. A. 370; In re Pickens Mfg. Co. (D. C.) 158 Fed. 894; In re Maplecroft Mills (D. C.) 218 Fed. 659; Exploration Mercantile Co. v. Pacific Hardware & Steel Co., 177 Fed. 825, 101 C. C. A. 39; Doyle-Kidd Dry Goods Co. v. Sadler-Lusk Trading Co. (D. C.) 206 Fed. 813.

If we look to the record outside of the findings of fact, we find that to the intervening petition of the Farmers' State Bank et al. there was attached as an exhibit the complaint and answer in the cause in equity in which the receiver was appointed. The action as appears from the exhibit was brought by the stockholders of the alleged bankrupt to wind up its affairs, but the complaint alleges that the corporation was solvent, and the answer of the corporation admitted this allegation and prayed that such relief might be granted as justice and equity might require. It is said by counsel that the question as to whether the alleged bankrupt applied for the appointment of a receiver is not questioned on the record. This cannot be said to be so in the face of the general denial of the allegations of the petition and intervening petitions in bankruptcy filed by the alleged bankrupt and interveners. Reference is made in the briefs to a discussion had between the trial court and counsel at the trial of the bankruptcy action. We are of the opinion that this discussion between the court and counsel cannot be considered by us in the determination of the case. There is found in the record a document called "Appellees' Statement of the

Evidence." This statement is simply an oral opinion of the court made during the trial and before the appellees had finished their evidence and before the appellant had introduced any testimony whatever. To this statement appellant filed certain objections, a part of which were allowed and the others disallowed. The document itself never received the approval of the court so far as the record shows, but is simply certified by the clerk.

[3] The important question sought to be raised by the appeal is as to whether certain persons who subscribed for the stock of the alleged bankrupt can be said to be its creditors. Counsel for the alleged bankrupt claim that they cannot be so considered and cite the decision of this court in Scott v. Abbott, 160 Fed. 573, 87 C. C. A. 475. The trial court found the alleged bankrupt insolvent by treating these subscribers as creditors and on this ground alone. When we come to consider the question as to whether these subscribers can occupy the position of creditors or not, we are met with such an insufficient record that we cannot intelligently pass upon that question. Scott v. Abbott, supra, and other cases like it, proceed on the theory that one who has become a stockholder of a corporation, acted as such, and received dividends, cannot when the bankruptcy of the corporation intervenes assume the position of creditor and share in the assets with the other creditors who may have incurred their indebtedness on the strength of these same people being stockholders of the company. The ground upon which the court refused to recognize him as a creditor was that of estoppel. In the present case the evidence, such of it as was given at the trial, is not in the record. We find from the pleadings and findings that certain persons at some time made subscriptions for stock in the alleged bankrupt and that it is claimed that these subscriptions were entered into by reason of the false and fraudulent representations made by the agents of the alleged bankrupt, and it seems to be presumed or assumed that some or all of these persons may have the right to rescind their contracts and to recover the money paid thereon. But no such case has been tried in this proceeding. It does not appear that any person has rescinded his contract or that it has ever been adjudicated what any particular person is entitled to recover. How can the insolvency of the alleged bankrupt be determined until the claims against it have actually been adjudicated? These persons who subscribed for stock, being induced to do so by fraud, and which stock they never received, may have a right to rescind their contract if done promptly, and recover the amount paid; but no such case appears to have been adjudicated. Persons so situated might become creditors with provable unliquidated claims under section 63, 30 Stat. 562, 563 (section 9647), but to file or join in the filing of an involuntary petition, a creditor must be such at the time the petition is filed. We are of the opinion therefore that as there is no finding or evidence that the alleged bankrupt applied for a receiver, or that it was appointed by reason of insolvency, and as there is no evidence or finding upon the issues as to whether the petitioners in the original petition and others in like situation are stockholders or merely subscribers for stock in the alleged bankrupt or whether if stockholders or subscribers as to the

amount of their claims arising from their rescission of their subscription contracts, that the decree of adjudication ought to be reversed, and the case remanded, with instruction to the trial court to proceed therein upon such evidence as has been received and which hereafter may be received and render such decree as may be just and not inconsistent with the views herein expressed.

Reversed.