### In re MAPLECROFT MILLS.

(District Court, W. D. South Carolina. November 23, 1914.)

1. BANKRUPTCY (§ 90*)—ACTS OF BANKRUPTCY—RECEIVERSHIP—EVIDENCE.

Where the act of bankruptcy alleged in an involuntary petition is that prescribed by Bankr. Act July 1, 1898, c. 541, § 3a(4), 30 Stat. 546, as amended by Act Feb. 5, 1903, c. 487, § 2, 32 Stat. 797 (Comp. St. 1913, § 9587), that because of insolvency a receiver has been put in charge of the debtor's property under the laws of the state, the issue is not directly that of insolvency, but whether the receiver was appointed on that ground, and if the record of the court making the appointment shows that it was made on that ground, extrinsic evidence of insolvency is not necessary.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 124; Dec. Dig. § 90.*]

2. BANKRUPTCY (§ 60*)—ACTS OF BANKRUPTCY—GROUNDS FOR APPOINTMENT OF RECEIVER.

A court of equity has no power to take possession of and operate by its receiver the business and property of an industrial corporation, and

to enjoin creditors from enforcing their legal remedies except as incidental to the granting of some definite and substantive relief, and to conserve the property for the benefit of creditors because of the insolvency of the corporation until it can be sold and the proceeds distributed without undue loss because of piecemeal administration; hence where a receiver for such a corporation is appointed, with power to conduct its business, it must be presumed that the action of the court was based on a finding of insolvency which constitutes an act of bankruptcy under Bankr. Act July 1, 1898, § 3a(4), as amended by Act Feb. 5, 1903, § 2.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 80; Dec. Dig. § 60.*]

3. BANKRUPTCY (§ 81*)—ACTS OF BANKRUPTCY—APPOINTMENT OF RECEIVER.

Where the act of bankruptcy charged in a petition is that because of insolvency a receiver was put in charge of defendant's property and the order appointing the receiver does not state the grounds therefor, the record on which it was made must be referred to for the purpose of determining the fact.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 59, 113–118, 125; Dec. Dig. § 81.*]

4. BANKRUPTCY (§ 60*)—ACTS OF BANKRUPTCY—RECEIVERSHIP BECAUSE OF INSOLVENCY.

Where the real and substantial effect of the appointment of a receiver for a corporation by a state court is that the appointment was made because of insolvency, and the further proceedings should logically be to wind up the corporation and distribute its assets, the jurisdiction of a court of bankruptcy to adjudge it a bankrupt on the ground of such appointment cannot be defeated because, in the proceedings or pleadings or orders in the state court, no ground is stated for the receivership, or a ground other than insolvency.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 80; Dec. Dig. § 60.*]

5. BANKRUPTCY (§ 60*)—ACTS OF BANKRUPTCY—APPOINTMENT OF RECEIVER BECAUSE OF INSOLVENCY—"IMMINENT DANGER OF INSOLVENCY"—"INSOLVENCY."

The appointment of a receiver for a corporation by a state court under Code Civ. Proc. S. C. 1912, § 303, subd. 4, on the ground that it is "in imminent danger of insolvency," which means danger of insolvency from the standpoint of preserving the assets, is within the meaning of Bankr. Act July 1, 1898, § 3a(4), as amended by Act Feb. 5, 1903, § 2, and constitutes an act of bankruptcy thereunder.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 80; Dec. Dig. § 60.*

For other definitions, see Words and Phrases, First and Second Series, Insolvency.]

6. BANKRUPTCY (§ 60*)—ACTS OF BANKRUPTCY—APPOINTMENT OF RECEIVER.

Where certain creditors of an industrial corporation, acting in its interest, applied to a state court for the appointment of a receiver, which was made with the consent of the corporation, the fact that the complaint did not allege any ground of equitable jurisdiction to make the appointment, which could have been made only on the ground of insolvency, does not change the effect of the appointment as an act of bankruptcy under Bankr. Act July 1, 1898, § 3a(4), as amended by Act Feb. 5, 1903, § 2.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 80; Dec. Dig. § 60.*]

7. BANKRUPTCY (§ 20*)—INVOLUNTARY PROCEEDINGS—ASSETS IN POSSESSION OF STATE COURT.

That a state court by its receiver has taken possession of the property of a corporation does not absolve a federal court from the duty of adjudging

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

it a bankrupt, where the requisite grounds are alleged and proved by the petitioning creditors.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 23; Dec. Dig. § 20.*]

**8. BANKRUPTCY (§ 60*)—ACTS OF BANKRUPTCY—CORPORATION.**

The fact that the consent of a corporation to the appointment of a receiver by a state court because of its insolvency was not authorized by formal corporate action does not prevent such appointment from constituting an act of bankruptcy under Bankr. Act July 1, 1898, § 3a(4) as amended by Act Feb. 5, 1903, § 2.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 80; Dec. Dig. § 60.*]

In Bankruptcy. In the matter of the Maplecroft Mills, alleged bankrupt. On motion by defendant for new trial. Motion denied, and adjudication ordered.

Mayson & Johnson, of Atlanta, Ga., and John H. Earle, of Greenville, S. C., for petitioning creditors.

McCullough, Martin & Blythe, of Greenville, S. C., for Maplecroft Mills.

SMITH, District Judge. This matter came on to be heard upon a petition for involuntary bankruptcy filed against the Maplecroft Mills, on September 10, 1914. This petition alleged that the Maplecroft Mills, a cotton manufacturing corporation, was insolvent, and that it had committed an act of bankruptcy, in that on the 25th of August, 1914, preceding it had allowed a receiver because of its insolvency to be put in charge of its property by the court of common pleas for Pickens county in the state of South Carolina. To this petition the Maplecroft Mills answered, denying insolvency, denying that it had committed the act of bankruptcy alleged in the petition, and requiring that the issues be inquired of by a jury. The cause was thereupon placed upon the docket for the trial of issues by a jury in bankruptcy, and was called at the October, 1914, term at Greenville. Upon the call a jury was impaneled, and for evidence to support their petition the petitioners introduced in evidence the record from the court of common pleas for Pickens county in the case of Carolina Supply Company and William Goldsmith v. Maplecroft Mills. The construction of that written record is for the court, and if in the opinion of the court it appeared upon the face of this record that the property of the Maplecroft Mills was upon the date stated placed in the hands of a receiver by the state court because of insolvency, it was the duty of the court to instruct the jury to find a verdict to that effect. There were other points at issue in the petition and answer; but inasmuch as if in the opinion of the court the construction of the record was as above stated, it determined and ended the cause. The court, therefore, being of the opinion that the proper construction of the record so put in evidence was to the effect that it appeared upon the face thereof that because of insolvency a receiver was, on August 25, 1914, by the court of common pleas for Pickens county placed in charge of the property of the Maplecroft Mills, it thereupon directed a verdict to that effect to be rendered

by the jury, which was done. Upon the coming in of the verdict counsel for the respondents moved the court for a new trial upon the following grounds: (1) That it does not appear from the record in the state court nor the evidence that because of insolvency a receiver has been put in charge of the property of respondent corporation by the state court. (2) On the ground that it affirmatively appears from the record that the receiver was put in charge of the property in the state court upon other grounds. (3) That it does not appear from the record in the state court, nor the evidence, upon what ground the receiver was appointed in the state court. (4) That the finding of the state court does not preclude the respondents from introducing evidence in this court upon the issue of insolvency. (5) That the remedy of the petitioner and the creditors with respect to the finding of the state court is in that court. (6) Upon the ground that the respondents are entitled to introduce evidence upon the question as to whether the proceeding in the state court is binding upon the respondents; that is to say, upon whether there was corporate action.

Full argument and consideration has been had upon such argument, and the matter is now before the court for determination. If the conclusion of the court be that it was in error in its ruling as to the construction of the proceedings in the state court, then a new trial should be ordered on any other issues involved in the petition which would justify an adjudication in bankruptcy; if, however, the opinion of the court is finally that it was correct in its construction of that record made at the time of trial, then a new trial would be refused and an adjucation in bankruptcy ordered. The question, therefore, primarily and for the purposes of this present decision entirely depends upon the proper construction to be placed upon the proceedings and the order thereon made in the state court.

[1] This petition in bankruptcy is filed mainly under the third clause of subdivision 4 of section 3 of the Bankrupt Act as amended in 1903, which prescribes that an act of bankruptcy exists where a party made a general assignment for the benefit of his creditors, or, being insolvent, applied for a receiver or trustee for his property, or because of insolvency a receiver or trustee has been put in charge of his property under the laws of a state, or territory, or of the United States. Acts of bankruptcy, therefore, under this subdivision 4 are three: (1) Making a general assignment for the benefit of creditors; (2) being insolvent, applying for a receiver or trustee for his property; (3) because of insolvency a receiver or trustee has been put in charge of his property under the laws of a state or a territory, or the United States. It will be seen by the language of the Bankrupt Act that under this last clause insolvency itself is not made one of the substantial issues to be tried as an issue of fact in the bankrupt court except in so far as the appointment of a receiver or trustee has been because of insolvency. In other words, if the action of the court appointing a receiver was based upon insolvency, that is the only question for determination, and in itself would appear to determine the question of insolvency as adjudicated in the order making the appointment. It is not necessary under this subdivision that, in addition to evidence showing the appoint-

ment of a receiver by the court appointing the receiver because of insolvency, evidence should be additionally produced outside of the action of the court to show that the alleged bankrupt was in fact insolvent. In other words, it is not necessary, upon an application for involuntary bankruptcy under this last clause, to prove both that the alleged bankrupt had had a receiver appointed because of insolvency, and in addition and wholly dehors of this order of appointment the alleged bankrupt was actually insolvent, but to establish only that the receiver was appointed by the court appointing him because of insolvency, which involves and establishes the existence of insolvency. This question is to be determined principally by the inspection of the record of the court appointing the receiver.

"Under the second provision it has been held that where the creditors' petition charges a single act of bankruptcy, viz., 'because of insolvency a receiver or trustee has been put in charge of his property under the laws of a state; the act of bankruptcy is dependent upon the state of facts disclosed upon the record in the case before the court making the appointment of a receiver. In re Douglas Coal & Coke Co. (D. C.) 131 Fed. 769; In re Spalding, 139 Fed. 244 [71 C. C. A. 370]." Exploration Merc. Co. v. Pacific H. & S. Co. (C. C. A., 9th Circuit) 177 Fed. 825, 840, 101 C. C. A. 39, 54.

[2] The record in the court of common pleas for Pickens county, which has been put in evidence in this case, consists, so far as the present question is concerned, of the complaint in the state court, with the exhibit attached thereto, the answer of the defendant, the Maplecroft Mills, and the order of the state court appointing a receiver. Upon an inspection of this record it appears that the complaint was dated August 24, 1914; the answer to the complaint was dated August 25, 1914, and the order appointing a receiver was made August 25, 1914, upon the consent of the defendant, the corporation being the only defendant. The question now arises upon the construction of this record: Does it show that a receiver has been appointed in the state court "because of insolvency," within the meaning of the Bankrupt Act? The complaint in the state court upon its face purports to be brought on behalf of all creditors and all stockholders of the corporation. This is a most anomalous characterization at the outset, for as a corporation represents its stockholders, there is no reason why a proceeding should be brought by stockholders on behalf of the corporation unless there is some antagonistic position alleged and shown between the stockholders and the corporation, which is practically impossible in the case of all the stockholders. There may be a difference between a part of the stockholders and a corporation, but it is impossible to conceive of a position where there can be any subject of litigation between all the stockholders and the corporation so long as the rule of law exists that the stockholders collectively are the corporation. The two parties plaintiff are creditors for a relatively small amount, viz., one for $1,012.09, and the other for $90.42, a total of $1,102.51, out of an alleged aggregate indebtedness of $176,184.23. The complaint alleges that the defendant corporation is indebted to various parties in the sum of near $175,000. The exhibit attached to the complaint shows its indebtedness to be $176,184.23. The complaint alleges, further, that a large amount of this is past due, and the rest will fall due

in a very short time; that the corporation is unable to pay that which is past due or that which is to become due; that it is without credit and cannot borrow the money to meet its obligations and continue its business; that the corporation itself admits its inability to pay its debts, and that plaintiffs are advised that many of the creditors will immediately begin suit on the obligations of the defendant, and proceed to collect by judgment and execution, with the result that the mills will be closed and the property of the corporation sacrificed; that under normal conditions the plaintiffs believe the defendant could carry on its business, but that the European war and recent developments in the financial and industrial world render it impossible for the defendant corporation to finance its business, procure credit, and maintain itself as a going concern, although the plant and business of the said corporation is worth much more as a going concern than if it were forced from lack of funds to shut down; that it has a well-organized labor force employed of 125 people, who in case of a shutdown would be thrown out of business and scattered, with great loss to the defendant; that in the present condition of the money market and in the adverse circumstances existing in the industrial and financial world, as plaintiffs are informed and believe, the property of defendant corporation would not at forced sale bring 50 per cent. of its actual value, and that it is entirely to the interest of the creditors and stockholders to conserve the property and business of the defendant corporation; and that to this end it is advisable and necessary that a receiver be appointed for the assets, with full power to operate the plant, manufacture goods, buy cotton and supplies, sell products, and do all other things proper and necessary to continue the business; and that the receiver should be authorized to borrow money in order to carry on the business and to continue the business as a going concern until a reorganization can be effected or a sale of the property be had, or until such time as it will be expedient or possible to make arrangements to meet the demands of its creditors; and that it is necessary, in order to conserve the assets and value of the defendant's business, that all creditors and stockholders be enjoined from bringing legal proceedings except in that action.

An inspection of this complaint in itself would justify the characterization that for a proceeding in equity it is one of a very anomalous kind. There is no distinct equitable ground for the jurisdiction of a court of equity alleged. The proceeding is not brought nominally to liquidate the corporation as insolvent and marshal and distribute its assets. It is not brought to enforce a lien of any kind. It does not expressly and in words purport to be brought because the corporation is insolvent and the assets must be preserved and marshaled and distributed and sold for the benefit of its creditors. It does not allege a single controversy or disputed question to be adjudicated by a court. There appear to be no antagonistic interests or parties. The court is not asked to do anything of a judicial nature. It is brought, according to the theory of counsel, only in order that the court shall do what is styled conserve the property of the corporation and continue its business. In other words, the proposition of plaintiffs in the state court is that the court of equity, where the stock-

holders of the corporation cannot carry it on successfully, shall take possession of its assets and carry on an unsuccessful business, in the meanwhile preventing outside creditors or persons having legal claims from asserting in another proper tribunal their just claims. The court of equity is supposed, under the theory of this complaint in the state court, to act as the King of England was supposed to act in case of charitable corporations as parens patriæ. An industrial corporation —not a public service corporation—but an *industrial* corporation, carrying on business in like manner as an individual for the profit and benefit of the corporation and of its stockholders, finds that it cannot carry on business profitably or successfully. The stockholders in charge have been unable to carry on the business successfully; they have a large number of contract obligations which it does not suit them to meet, or which they are unable to meet, but which if the holders are allowed to prosecute or to assert their legal rights will put an end to the corporation carrying on its business. They therefore appeal to a court of equity to do that which they themselves have not been able to do, that is, to carry on the business of the corporation successfully, and further to do that which they themselves have no legal right to do, that is, prevent outside persons having legal claims from enforcing them for an indefinite period, and, to accomplish the purpose of carrying on the corporation's business, that the court of equity should do that which the corporation in no respect had the power to do, viz., create an artificial credit by creating prior liens over existing obligations. That is to say, that a court of equity should allow its receivers to carry on the business and to borrow to the destruction of existing mortgages or other liens or the interests of other existing creditors for the purpose of preserving and conserving for stockholders the business which has proved to have been so unsuccessful.

There is no jurisdiction in the court of equity to perform any such task as this. A court of equity does not exist for the purpose of operating industrial and manufacturing enterprises. It is supposed to exist for the purpose of administering justice by adjudicating disputed questions and by awarding to suitors their rights. Incidentally to its proper jurisdiction to marshal and distribute assets a court of equity has power to take possession of and to preserve property and have its receivers temporarily and for the purposes of preservation only, until a sale can be had, and in certain cases, to accomplish these purposes, to operate the property, and issue receivers' certificates. In the case of industrial corporations, who have no duty to perform to the public, this power is to be very carefully, cautiously, and rarely exercised, and only in ordinary cases for the purpose of actual preservation of the property. There is no known authority or power in a court of equity to take possession of the property not for the purpose of granting and decreeing some definite relief, but for the purpose simply indefinitely, for no fixed purpose, of operating the property and creating liens thereon to the destruction of other interests and in the meanwhile of indefinitely warding or barring or fencing off creditors and others having legal claims from asserting their just

rights against the property. A consideration of this assertion of jurisdiction as existing in courts of equity, carried to its logical conclusion, would show to what monstrous lengths it would lead. It would show in what an unfortunate and false position a chancellor or judge would be placed. In lieu of deciding questions and adjudicating and enforcing rights he would be the operator of large industrial enterprises on a large scale through his appointees, and the dispenser of power and patronage by such appointments to an unlimited amount. No judge should be in such position; the office is not held to be subject to the demoralization and temptations of dispensing power and patronage, but for the purpose of adjudicating questions and dispensing justice. That appeals of the kind made in the complaint in the state court have been made to courts of equity, and unfortunately in too many cases allowed, is true, and it is possible that from the apprehension of results that may follow from such a course that much of the public prejudice against that most salutary power of courts of equity, viz., the appointment of receivers, has been created and continues. The records of the courts show only too many cases where this attempt upon the part of a court of equity to operate industrial enterprises through its receivers has resulted disastrously, and only too many cases where the adoption of the extraordinary but too facile method of raising money on the artificial and compulsory credit of receivers' certificates has displaced existing liens and destroyed what were supposed to be fixed contract rights. Where stockholders have made mortgages whose prior liens they must themselves respect, they are prone to appeal to the extraordinary power of a court of equity for their benefit to displace and destroy the liens they have themselves created so as to raise additional funds for the operation of a business in whose speculative result the stockholders are alone interested. An injunction against other creditors bringing action is only to prevent the piecemeal administration of an insolvent estate. To extend it beyond this, to enjoin all creditors from prosecuting their rights for an indefinite period simply that the concern may be operated for the speculative benefit of stockholders, would be in effect to enact a judicial stay law which is not a prerogative of a court of equity.

An inspection of this proceeding in the court of common pleas for Pickens county shows upon the face of it no ground in equity for any court to take possession of this property and operate it actively as it is prayed, and thus indefinitely prevent creditors from enforcing their statutory and legal rights and remedies save and except upon the ground of insolvency. It is to be assumed, therefore, that the state court as a court of equity could only have taken possession of the property of the corporation upon some definite and fixed ground of equity jurisdiction. Upon the face of the complaint that fixed and definite ground of equity jurisdiction could only have consisted in the power of the court of equity to take possession of the assets of an insolvent corporation for the benefit of its creditors and forthwith to proceed to wind up, liquidate, sell out, and distribute all the assets among the parties entitled, and for that purpose to enjoin and debar

creditors from asserting their rights only until this distribution and liquidation and adjustment of their just rights can be had with due despatch according to the ordinary proceeding in a court of equity.

[3] There exists upon the face of this complaint in the state court no other ground or justification whatsoever for a court of equity to have taken possession of the property of this corporation and appointed its receiver, save to enforce the just rights of creditors of an insolvent corporation. The answer of the defendant admits all the allegations of the complaint, and upon this complaint and consenting answer the receiver is at once appointed by the court. No grounds in the order are given by the state court upon which the appointment of a receiver is made. The order does not state that the receiver is appointed because of the insolvency of the corporation, or for any other reason. The order simply appoints a receiver, but the order is made upon the basis of a complaint of this character and upon an answer admitting all the allegations, and made at once as soon as the complaint and answer are filed, both actions being done contemporaneously. Where the order of appointment does not state the grounds, the record upon which the order was made must be referred to, to ascertain the facts which justified the order.

"If the court had merely appointed a receiver, without reciting the grounds of its judgment, the record could have been referred to, or the grounds shown by evidence aliunde. Russell v. Place, 94 U. S. 608 [24 L. Ed. 214]; Davis v. Brown, 94 U. S. 428 [24 L. Ed. 204]." In re Spalding (C. C. A., 2d Circuit) 139 Fed. 244, 247, 71 C. C. A. 370, 373.

The state court as a court of equity must, in the absence of any grounds being stated, be presumed to have acted upon the only grounds which at law or in equity would, on the face of the record by any possibility, have authorized the order. Upon the face of the record in the state court no ground can be assigned which would stand the test of such authorization, save the ground of insolvency, and the state court must be presumed to have made the appointment on that ground. It cannot be assumed that the state court acted except upon recognized principles of law and equity.

[4] It appears on the face of the record that the action of the state court was invoked by the corporation itself, in order that the stockholders be relieved from the consequences of their management. From the record as a whole it is fairly inferable that the whole proceeding is a consent proceeding and was done on the application and for the benefit of the corporation. We have therefore proceedings filed nominally for the stockholders and creditors of the corporation, but really filed on behalf of and proceeding from the corporation itself, whereby it seeks to have its creditors and other persons having legal claims against it indefinitely postponed from the assertion of their legal rights, whilst the corporation is operated by a court of equity, and not operated simply to conserve the property only until the same can be sold and its assets liquidated and its creditors paid, but operated indefinitely until, as it is phrased, some reorganization satisfactory to the stockholders or others can be had. This construction of the proceedings in the state court is strengthened

by the fact that the receiver appointed to operate the corporation by the state court is himself, the president of the corporation under whose management the conditions of affairs has arisen which necessitates the appeal to a court of equity to do that which the administration of the corporation has been unable to do; that is to say, to operate and manage its business profitably. The answer of the defendant is sworn to on August 24, 1914, by G. Lang Anderson, as the president of the Maplecroft Mills, and on the same day G. Lang Anderson is the party appointed by the state court receiver upon the complaint and answer. The state court by its appointment of a receiver has ousted the stockholders from their possession of the corporation. It has displaced all the directors and officers of the company. Yet no charge has been made against these officers. The complaint does not allege that they are incompetent or unfaithful. The complaint does not allege that the stockholders or officers of the company have abused their position. Upon what possible theory can the stockholders and officers of the company be deprived of the possession of their property save on the ground that the property really belongs to others, viz., the creditors? It belongs to the creditors because the assets are insufficient to afford any real interest to the stockholders, and the corporation is thus by its own written admission insolvent.

The effect now of this appointment in the state court is to be construed in its relation to the Bankrupt Act. The Bankrupt Act embodies a system of paramount and general provisions for the enforcement by creditors of their rights against corporations and individuals in the contingencies provided for in the act. Upon the happening of the contingencies mentioned in the Bankrupt Act the provisions of the act become paramount and imperative, and the rights of the creditors can be stayed by no pretense or device to the contrary. In other words, where a condition arises which by its situation calls for the paramount operation of the Bankrupt Act, its operation cannot be stayed by the fact that it may be attempted under any guise or method whatsoever to take away from its operation that which should properly be subjected thereto. To hold otherwise would be to destroy the whole effect of the operation of the act. If the effect of the action of the state court in the taking possession of the assets of the corporation be in result to subtract from the operation of the Bankrupt Act that which would be subject to it, the so wording of the order as that the state court's action may be placed on another ground would not be effective to prevent the operation of the Bankrupt Act. In other words, where the real and substantial result of the state court's order was that a receiver was appointed because of the insolvency of the corporation, and the effect of the proceedings in the state court should logically be to wind up and liquidate the assets of the corporation and distribute them as the assets of an insolvent corporation the operation of the Bankrupt Act cannot be defeated because in the proceedings or pleadings or orders or decrees of the state court its action may be based upon no ground at all, or upon any other ground than insolvency. To hold otherwise would be to allow, in any case where for the purpose of effecting such results pre-

tensive grounds were alleged for appealing to the state court, the whole distribution and liquidation of the assets of an insolvent and bankrupt corporation to be taken away, and creditors to be deprived of that which by paramount statute is intended for their benefit under a general and uniform system of administration of insolvent corporations.

"The corporate entity cannot be so disguised that it can successfully masquerade in the name of a stockholder, and, evading the searching eyes of a court of equity, hinder, delay, and defraud its creditors and defeat the provisions of the bankruptcy act. A court of equity looks through forms to the substance of things, thus preserving the rights of innocent parties against all forms of deception and fraud." Exploration Merc. Co. v. Pacific H. & S. Co. (C. C. A., 9th Circuit) 177 Fed. 825, 839, 101 C. C. A. 39, 53.

There are cases in which receivers can be appointed by state courts of corporations which are not insolvent, and for purposes which would not call for the operation of the Bankrupt Act. It has been held in the case of a public service corporation that where the administration contumaciously refuses to perform the duties which it is ordered to perform by the decree of the court, the court can appoint a receiver to take possession and perform them. It has been held that where a majority of stockholders override the rights of minority stockholders and pay no attention to the decrees of the court requiring them to respect such rights, the court will take possession of the assets and appoint a receiver who will protect the rights of the minority stockholders. It has been held that where the administration of the corporation is guilty of fraud or mismanagement, or insists upon so performing its business in violation of the plain instructions of law that loss of its charter is threatened, with the destruction of its property, to the great detriment of its minority stockholders, a court of equity will, under certain circumstances, appoint a receiver. But these are all cases in which the corporation still continues as a solvent, existing corporation, and in which there is primarily no question as to the rights of creditors. Where, however, it is a question of the rights of creditors and the appeal to the court is plainly based upon the fact that there is not enough to meet the rights of the creditors, and the action of the state court is to protect and liquidate and care for the rights of creditors, then it is that the Bankrupt Act comes in. That act has prescribed a general, uniform system for the liquidation of insolvent corporations and for the assertion of the rights of creditors, to which every creditor is entitled, and wherever it is endeavored to take away from the operation of the act that which is properly subject to it, it is the duty of the court to consider the substantial results, whatever may be the cloak that is used to cover them. In the present case there is, under the allegations of the complaint in the state court, no known ground of equity jurisdiction to justify the action of that court in taking possession of the assets of this corporation and appointing a receiver, unless it be to protect creditors and for their benefit to liquidate the corporation and wind up its affairs and distribute its assets upon the hypothesis that it is insolvent, and it must be inferred that the state court acted upon the only ground that could justify its action.

[5] It is contended, on behalf of those who resist the adjudication in bankruptcy, that under the state statute the state court has power to appoint a receiver of a corporation that is in imminent danger of insolvency, as well as if it be insolvent. Code Civ. Proc. S. C. 1912, § 303, subd. 4. The language of the Code of Civil Procedure, in using the words "or in imminent danger of insolvency," means, however, danger of insolvency from the standpoint of preserving its assets, that is to say, that unless a receiver be appointed, a corporation just about to become insolvent will have its assets wasted. In other words, the language of the Code of Procedure, "in imminent danger of insolvency," is the equivalent of the word "insolvency" as used in the Bankrupt Act as denoting the ground for the appointment of the receiver. The appointment of a receiver, whether because the corporation is insolvent or in imminent danger of insolvency, is in either case predicated upon insolvency. In the one case it is because that insolvency is actual, in the other case because that insolvency is imminent, but in both cases it is because of insolvency. Where, therefore, a court of equity such as the court of common pleas for Pickens county takes possession of the assets of a corporation and displaces the management and control of the stockholders and appoints a receiver to operate the corporation and preserve the assets with a view to ultimate distribution among the creditors, it can only be on the ground that the property practically belongs to the creditors, because its assets are insufficient to meet any interest in the stockholders. In such case the corporation is insolvent and the appointment of the receiver, whether because the corporation be then actually insolvent or in imminent danger of insolvency, is an appointment because of insolvency within the meaning of subdivision 4 of section 3 of the Bankrupt Act.

"When it appears that the application for a receiver has relation to insolvency, and that the purpose of the proceeding is to have the corporation managed with a view to its dissolution and the distribution of its assets among the creditors of the insolvent, then the application for a receiver is clearly an act of bankruptcy." Exploration Merc. Co. v. Pacific H. & S. Co. (C. C. A., 9th Circuit) 177 Fed. 825, 841, 101 C. C. A. 39, 55.

[6] The counsel resisting the adjudication in bankruptcy further insist that, if it be so that the state court had no jurisdiction as a court of equity to appoint the receivers unless the corporation was insolvent, there being no other assignable ground for its action, yet that such error on the part of the state court is an error to be corrected there. That is, that if the state court chose to appoint a receiver when it was not justified in doing so because the court had no ground of equitable jurisdiction, this court must not construe this action of the state court to be justified in that it appointed receivers upon the ground of insolvency, but that it must remit the parties to the state court to go back and ask for a dismissal of the proceedings there on the ground that that court was without power to make the appointment on any ground stated in the complaint. This is, however, to overlook entirely the effect which this court is bound to give to the Bankrupt Act. The Bankrupt Act provides a general uniform system

for the administration of insolvent individuals and concerns. Creditors are given certain rights under this act which they are entitled to have enforced. In the present case, to tell them that the matter is to be remedied in the state court would be to give them no remedy at all. The only parties to the proceeding in the state court are the creditors who have acted on behalf of the corporation in making the application for the receivers in the state court, and the corporation itself, which has acceded to and joined in that application. It would be unreasonable to expect these parties who have themselves acted in the state court in order to procure the receivers now to go there and ask that court to undo what was procured by them to be done on the ground that that court was without power. The directions of the Bankrupt Act are imperative, and creditors are entitled to the rights therein given, and are entitled to have them enforced independent of any action of the state court. Under the Bankrupt Act and the theory by which it is enforced, upon the insolvency of a corporation or individual, the creditors become the owners, as it were, of the property, and have the right to administer it. They are given the right to appoint a trustee of their selection, who is to administer the property very much under their direction and control. This is a positive and uniform system provided by law for the administration of insolvent corporations. Its provisions cannot be defeated by any state action, legislative or judicial.

"The operation of the bankruptcy laws of the United States cannot be defeated by insolvent commercial corporations applying to be wound up under state statutes. The bankruptcy law is paramount, and the jurisdiction of the federal courts in bankruptcy, when properly invoked, in the administration of the affairs of insolvent persons and corporations, is essentially exclusive." In re Watts & Sachs, 190 U. S. 1, 23 Sup. Ct. 718, 47 L. Ed. 933.

To allow the state court, or any other court for that matter, save the federal, to administer the assets of such a corporation by receivers is to nullify the provisions of the Bankrupt Act. It is to allow these corporations whose property really belongs to their creditors to be taken away from the control and possession of the creditors and put in the control and possession of an appointee of the court. This control and possession for administration is the right which under the Bankrupt Act is expressly given to creditors, and it is the duty of the court which is charged with the administration of the Bankrupt Act to see that their rights in this respect are enforced and protected. If, therefore, a corporation is in the position in which a receiver has been appointed of its assets because of its insolvency, then the right of the creditors to control, manage, and administer its assets at once arises under the Bankrupt Act, and to remit them to the state court upon the theory that it is in that tribunal that they should make the question that the court has acted erroneously in the proceeding in which they are not parties would be wholly destructive of those rights.

[7] It is suggested that, the state court having already taken possession through its receiver of the property, for the federal court now to adjudicate the corporation bankrupt will lead to a question as to which court is entitled to possess and administer, as the state court

may take the position that it is not a case of insolvency, and that unless it be admitted by the state court that it is a case of insolvency, this court should refrain from action likely to cause friction. It is unfortunately true that the administration of the Bankrupt Act in these respects has caused and will cause friction between the two courts over the possession of the bankrupt assets, unless it is administered by both with the recognition of the fact that in all cases which come within the purview of its provisions the administration of the bankrupt estate necessarily belongs to and must be carried on in the federal court. It is frequently a very invidious and unpleasant duty for the federal court, when the state court has, by a receiver, taken possession of the assets of an insolvent individual or corporation, then to proceed to take them away from the state court for administration in the federal court under the provisions of the Bankrupt Act. The performance of this duty is one to be accomplished by both courts with mutual consideration and comity. However unfortunate and disagreeable this duty may be, it is the duty of the federal court under the Bankrupt Act and the decisions of the United States Supreme Court. In re Watts & Sachs, 190 U. S. 1, 23 Sup. Ct. 718, 47 L. Ed. 933. Wherever a corporation is adjudicated to be bankrupt its assets must be administered in the federal court. This is logically essential, as they cannot be administered piecemeal through long-drawn periods by different courts. It is for the purpose of carrying out and enforcing the theory of a general and uniform administration of assets under the provisions of the bankrupt statute. No matter if the state court has taken possession of these assets when the assets so taken possession of are the property of an individual or corporation duly adjudicated bankrupt and whose estate is to be administered in the bankrupt court, it is the obligation of the federal court to administer, and the duty of the state court to deliver, the assets and permit them to be administered in the federal court. For this purpose, under the decisions of the United States Supreme Court, it is the duty of the federal court to grant injunctions against persons and parties proceeding in the state court, and, if necessary, to require the receiver of the state court to deliver up possession of the assets to the trustee in bankruptcy, or even to a receiver appointed in the federal court. In re Watts & Sachs, supra. To avoid all friction on these points it is necessary to recognize that the Bankrupt Act is paramount in its provisions for the administration of insolvent estates, and that the moment the question comes in that these assets are to be administered upon the theory of insolvency, all other jurisdictions after an adjudication in bankruptcy cease, and that of the federal court becomes exclusive. It is no more exclusive, then, than the jurisdiction in admiralty, which exclusive jurisdiction, under the shipowners' statutory limited liability act, is exercised even to the point of requiring suits for loss or damage in the state courts to be dismissed and the whole matter referred to the federal court. Steamship Co. v. Manufactory Co., 109 U. S. 578, 3 Sup. Ct. 379, 617, 27 L. Ed. 1038.

It is better for both courts that there should be some uniform rule on this subject, and it would relieve the federal court of the disagree-

able position it is sometimes put into of taking possession of assets, by it being recognized that this condition exists wherever the liquidation or marshaling or distribution of assets of a corporation or individual is to be had because of insolvency. Whenever, in other words, creditors are shown to be in a position in which their rights must be protected, that the assets practically belong to them, and that the corporation is in a position because of insolvency in which its assets should be applied to the liquidation of the debts and the payment of the creditors through an adjudication in bankruptcy, then the federal court alone has the burden of the administration.

If, therefore, it were recognized as a uniform rule that wherever the proceedings in the state court show that what is sought in that court is the ultimate effectuation of these purposes, that is to say, the liquidation of the corporation and the application of its assets to the payment of creditors because of insolvency, then the provisions of the Bankrupt Act directing the method of administration in the United States Court become paramount, and the state court would not attempt to take possession, it would put an end to all question and friction whatsoever. The federal court would be thus relieved from the invidious duty of deciding whether or not in any particular case it should interfere with a court of equal dignity and concurrent jurisdiction because the nominal ground upon which the state court acted was not stated to be insolvency, although the whole result of the action in that court was necessarily based upon the theory that the corporation was to be liquidated as an insolvent corporation.

[8] Under the evidence in the case now before the court it is found that the only ground upon which the state court; to wit, the court of common pleas for Pickens county, could possibly have made the order of appointment of a receiver and taken possession of, to operate and eventually liquidate and marshal and distribute, the assets of the Maplecroft Mills under the allegations of the complaint was because of insolvency. The Supreme Court of the state of South Carolina has approved, for the state courts of the state of South Carolina, the same definition of insolvency as that given in the Bankrupt Act. Miller v. Land Co., 53 S. C. 364, 31 S. E. 281. Where the court of common pleas for Pickens county appointed a receiver because of insolvency, it must be presumed that it found under the laws of South Carolina it was such an insolvency as is defined to be insolvency in the Bankrupt Act, and that it adjudicated that question as against the Maplecroft Mills, so as to determine it as well for these proceedings as for those in the state court. It could not well be that the company was found to be insolvent in the state court for its own purposes on its own application, and then solvent at the same time in the federal court so as to defeat the application of its creditors. The position taken in the sixth ground of the motion for a new trial that in this proceeding the corporation had the right to disavow the action taken in the state court as not properly authorized by corporate action, so that in the one proceeding it would benefit by that action as duly authorized and in the other it should be at liberty to disavow it to the prejudice of creditors,

is disposed of by the principle decided in Exploration Merc. Co. v. Pacific H. & S. Co., supra, 177 Fed. 840, 101 C. C. A. 39.

These conclusions are in conflict in many particulars with the conclusions of the United States Circuit Court of Appeals for the First Circuit, in the case of In re Wm. Butler & Co., Inc., 207 Fed. 705, 125 C. C. A. 223. That decision, however, was by a divided court, an able judge (Judge Putnam) dissenting. The reasoning and conclusions of the United States Circuit Court of Appeals for the Ninth Circuit in Exploration Merc. Co. v. Pacific H. & S. Co., 177 Fed. 825, 101 C. C. A. 39, seem the better, and in the absence of any controlling decision in this circuit have been followed.

It is therefore ordered that the motion for a new trial be and the same is hereby refused.

It is further ordered, adjudged and decreed that it appears that the said Maplecroft Mills was insolvent at the date of the filing of the petition for involuntary bankruptcy herein, and that within four months prior to the filing of said petition a receiver was by the court of common pleas for Pickens county, because of insolvency, put in charge of its property, and it is thereupon ordered, adjudged, and decreed that the said Maplecroft Mills be, and the same is hereby, declared to be a bankrupt under the provisions of the statute of the United States in such case made and provided.